IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KYLE DAMOND JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:21-cv-37-L-BN |
| | § | |
| DALLAS COUNTY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Following remand from the United States Court of Appeals for the Fifth Circuit, *see Jones v. Dall. Cnty.*, No. 21-10617, 2022 WL 3334493 (5th Cir. Aug. 12, 2022), United States District Judge Sam A. Lindsay "recommit[ted] this action to the undersigned United States magistrate judge for further screening and proceedings consistent with the Fifth Circuit's opinion and instructions," Dkt. No. 24; *see also* 28 U.S.C. § 636(b).

The Court ordered that Jones's complaint as amended be served on Defendant Dallas County. *See* Dkt. Nos. 25-32. The County answered. *See* Dkt. No. 33. And, after the parties filed a court-ordered joint report under Federal Rule of Civil Procedure 26(f), *see* Dkt. No. 38, the Court entered a scheduling order under the Civil Justice Expense and Delay Reduction Plan for the Northern District of Texas and Federal Rule of Civil Procedure 16(b), *see* Dkt. No. 40; *see also* Dkt. No. 42 (extending on a showing of good cause the County's deadline to move for summary judgment).

Dallas County moved for summary judgment on Jones's claims. *See* Dkt. Nos.

43-45. Jones responded. *See* Dkt. No. 48. The County replied. *See* Dkt. No. 49. And Jones filed an unauthorized sur-reply [Dkt. No. 50], which the undersigned has not considered, *see, e.g.*, *Gezu v. Charter Commc'ns*, 17 F.4th 547, 555-56 (5th Cir. 2021) (observing that, because neither this Court's local rules nor the Federal Rules of Civil Procedure authorize sur-replies "as a matter of right, the district court only accepts such filings 'in exceptional or extraordinary circumstances'" (quoting *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)).

After considering the record and the authorized briefing, the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss this lawsuit with prejudice.

**Legal Standards**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). And "[a] factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of

a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal

quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal

quotation marks and footnote omitted)); *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 355 (5th Cir. 2019) (A court must "view the evidence and draw all justifiable inferences in favor of the nonmovant. Even so, barebones, conclusory, or otherwise-unsupported assertions won't cut it; the nonmovant 'must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.'" (footnotes omitted)).

So, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

As the Fifth Circuit concluded, "Jones has sufficiently alleged a due process claim because he alleged he was a pretrial detainee who was not separated from convicted detainees when security and space in the County permit separation." *Jones v. Dall. Cnty.*, 2022 WL 3334493, at *1 (citing *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. Jan. 1981) (en banc), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986) (en banc)).

But that was not enough to allege liability against the County. At the pleadings stage, a plaintiff alleging a claim against a municipality "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal

policy was the moving force behind the violation." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). *Cf. Jones v. Dall. Cnty.*, 2022 WL 3334493, at *3 n.3 ("leav[ing] it to the magistrate judge and district court to decide this issue in the first instance" on remand and "not[ing] only that if Jones's allegations are deficient in this regard, Jones should be granted leave to amend his complaint because the district court's first dismissal did not put him on notice that his claim might have failed on *Monell* grounds").

Following remand, Jones amended his complaint in response to the Court's order, realleging just a due process claim. *See* Dkt. Nos. 25-28. And, while prior to his appeal to the Fifth Circuit, Jones's claims were a moving target, *see, e.g.*, *Jones v. Dall. Cnty.*, 2022 WL 3334493, at *1 n.1, his post-remand amended complaint – which fails to adopt or incorporate by reference his prior complaints – is the operative complaint and encompasses the universe of claims that Jones now brings in this lawsuit, *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." (citation omitted)).

The Court considered the amended complaint against the legal standards applicable to municipal liability, *see, e.g.*, *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021), and concluded that,

> [s]olely for the purpose of screening, … Jones has alleged liability based on what he claims to be the official policy of the County. *Cf. Jones*, 2022

>  WL 3334493, at *3 ("[U]nder a liberal construction of his complaint and subsequent filings, [Jones] has made clear that his claim is brought under the due process clause, that he, as a pretrial detainee, was not separated from convicted detainees, and that the remedy is to separate pretrial detainees from convicted detainees. He also alleges the County has the space and facilities to separate pretrial detainees from convicted detainees. These allegations are sufficient to allege a due process claim that withstands screening under 28 U.S.C. § 1915(e)(2)(B)(ii)."); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 n.5 (5th Cir. 2017) ("In affirming the district court's dismissal, we do not rely on the district court's observation that 'the housing of convicted inmates with pretrial detainees is not per se unconstitutional.' Housing pretrial detainees with DOC inmates is a violation of their rights 'unless such a practice is reasonably related to the institution's interest in maintaining jail security or physical facilities do not permit their separation.' *Diamond*, 636 F.2d at 1374. Alderson has alleged a violation of the rule against housing pretrial detainees with DOC inmates, <u>and nothing suggests that an exception to the rule applies</u>." (emphasis added)).

*Jones v. Dall. Cnty.*, No. 3:21-cv-37-L-BN, 2022 WL 4295339, at *2 (N.D. Tex. Sept. 16, 2022).

And, although Jones sufficiently alleged a due process claim against the County – to allow this lawsuit to proceed further – Jones must now do more than that, where the County moves for summary judgment with evidence to refute Jones's due process claim against it.

To begin, the due process right recognized in *Jones v. Diamond* is not an unfettered right of pretrial detainees never to be confined with convicted persons. Instead, "pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit." *Jones v. Diamond*, 636 F.3d at 1374; *see also Pembroke v. Wood Cnty., Tex.*, 981 F.2d 225, 229 (5th Cir. 1993) ("Under *Jones v. Diamond*, failure to adequately classify inmates is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." (footnote

omitted)), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001).

As such, "[t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such a practice is 'reasonably related to the institution's interest in maintaining jail security,' or physical facilities do not permit their separation." *Jones v. Diamond*, 636 F.2d at 1374 (quoting *Bell v. Wolfish*, 441 U.S. 520, 531 (1979); citations omitted). For example, "if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted by the *Bell v. Wolfish* criteria." *Id.*

And, while Jones alleges that the County's policy is to indiscriminately confine pretrial detainees with convicted persons even where it could separate them, the County has presented evidence of its actual policy and how that policy affected Jones, through an affidavit of a Chief Deputy Sheriff, who oversees operations at the Dallas County Jail ("DCJ"); its written policy; and its records pertaining to Jones's confinement. *See* Dkt. No. 44 ("App.").

As the County summarized in its brief,

> [p]retrial detainees are individually classified under the Dallas County Sheriff's Department's policies as part of the intake process; classification involves an interview of the pretrial detainee, and jail staff assess the custody level of a detainee based upon a number of factors, including the severity of the offense alleged, seriousness of past offenses, conviction history, any escape or disciplinary history, and alcohol or drug abuse. (App. 6, 12-17, 19-20). But, a detainee's medical needs or risk of suicide is also taken into account. (App. 6, 12-14, 17-20). Once the appropriate housing is determined, the pretrial detainee will be placed accordingly, but as available space permits. (App. 6, 19-20). And, the classification of a detainee will be re-evaluated during his stay such that the detainee may be moved as needed to ensure his safety. (App. 6, 19-

> 20).
> The Dallas County Sheriff's classification plan has been approved by the State of Texas. (App. 10). The DCJ was in compliance with Texas Commission on Jail Standards requirements in all respects during all times pertinent to this case. *Id.*

Dkt. No. 45 at 9-10.

As applied to Jones's classification that underlies his claim in this lawsuit,

> Plaintiff had a lengthy criminal history at the time he was brought to the DCJ in September of 2018. (App. 9, 26-27). Three warrants were issued for him in connection with two pending criminal cases in which Plaintiff was charged with aggravated assault with a deadly weapon, as well as a third pending case in which Plaintiff was charged with evading arrest/detection with a motor vehicle. (App. 5-6, 26, 37, 70). Plaintiff was involved in at least one fight during a stint in the DCJ earlier in 2018. (App. 9, 65-69). Based upon these factors, Plaintiff was classified as a maximum-custody inmate. (App. 9, 38).
> However, Plaintiff was also assessed as a suicidal risk upon his admission to the DCJ on September 18, 2018, and he was consequently placed in behavioral observation. (App. 9-10, 38). On September 21, 2018, Plaintiff was cleared medically and determined not to be a suicidal risk, so he was placed with the general population of the DCJ in maximum security housing in the DCJ, North Tower, and was assigned no status. (App. 38) Over the next four days, Plaintiff was in several different housing assignments and then moved from the North Tower to the West Tower because Plaintiff reported that he was being threatened by other inmates or that he felt unsafe, Plaintiff was the subject of complaints from other inmates who threatened him with physical violence, or Plaintiff requested psychiatric treatment. (App. 9-10, 38, 55-63). Plaintiff was moved back to the North Tower, where he stayed from September 25, 2018, until October 4, 2018, when he was again classified as being suicidal. (App. 38, 54). Plaintiff remained in the same tank in the North Tower under behavioral observation until November 16, 2018, when he moved so that he could be placed under protective custody. (App. 38, 47-48). He was kept under protective custody in the North Tower until he was transferred to the West Tower on January 2, 2019. (App. 38, 43-46). On that date, [Dallas County Sheriff's Office] staff did a welfare check on Plaintiff, and Plaintiff asked to be transferred to an eight-man tank so that his commissary items would not be stolen; Plaintiff did not request to be placed into protective custody and was given a form so that he could request medical personnel evaluate him and place him in an eight-man tank. (App. 43-46). Plaintiff remained in the general population under maximum custody until January 14, 2019,

>   when he was moved to temporary housing and placed under protective custody after complaining that other inmates were taking his commissary items and Plaintiff made a call to the Prison Rape Elimination Act (PREA) hotline. (App. 38, 41-42). Plaintiff was kept in protective custody until February 21, 2019, when he was moved back to the general population, maximum custody on February 21, 2019, where he stayed until he was released. (App. 38).

*Id.* at 12-14 (footnote omitted).

Against this evidence, Jones offers none of his own. *See* Dkt. No. 48.

"[T]he traditional leniency afforded to a *pro se* plaintiff does not excuse [Jones] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")).

And, "[a]lthough courts should advise *pro se* [parties] of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)); *see also Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("[T]here is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require *pro se* parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make

appropriate allowances for *pro se* responses that may be somewhat less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.").

So, in sum, because Jones fails to rebut evidence that the County's classification policy did not violate due process under *Jones v. Diamond*, the Court should grant the County's motion for summary judgment and dismiss this lawsuit with prejudice. *Cf. Arps v. Callahan*, 32 F.3d 566, 1994 WL 442486, at *3 (5th Cir. 1994) ("The district court found that the unrebutted evidence at the *Spears* hearing established that Arps was classified with other nonassaultive convicted felons because he had prior felony convictions. Testimony by Sheriff Callahan revealed that it was the Jail's policy to classify pretrial detainees that had prior felony convictions as convicted felons. This policy of classifying pretrial detainees with prior felony convictions with other convicted felons is reasonably related to the Jail's interest in maintaining jail security. Arps did not challenge Callahan's testimony that he had prior felony convictions. Thus, even if all of Arps' testimony is accepted as true, he fails to establish that the Defendants' policy of housing prior felons with convicted felons violated his constitutional rights. Thus, the district court did not abuse its discretion by dismissing this claim as frivolous." (citation omitted)).

## Recommendation

The Court should grant Defendant Dallas County's motion for summary judgment [Dkt. No. 43] and dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 8, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE